# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
### NORTHERN DIVISION

| | |
|---|---|
| **BRAZIL RUDOLPH, *et al.*,** ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | |
| **v.** ) | **Case No. 2:16-cv-57 (RCL)** |
| ) | |
| **THE CITY OF MONTGOMERY, *et al.*,** ) | |
| ) | |
| **Defendants.** ) | |

## <u>MEMORANDUM OPINION</u>

The motions before the Court and the facts of this case are convoluted.  In brief, plaintiffs allege that Montgomery City unlawfully violated their rights.  They claim, among other things, the City improperly worked with a State District Attorney to threaten indigents with arrest if they did not pay City fines for various traffic violations.  The City and the District Attorney, Daryl Bailey, filed motions to dismiss the complaint for failure to state a claim.  ECF Nos. 9, 13.  Plaintiffs responded in opposition to these motions, ECF 16, and simultaneously filed a motion to strike portions of, and attachments to, the City's motion to dismiss, ECF 17.  The City responded to the motion to strike, ECF 23, and Bailey in turn filed a motion to strike the plaintiff's opposition to the motion to dismiss, ECF 25.  That is, there are pending motions to strike attachments to or portions of both the City's motion to dismiss and the plaintiffs' opposition to that motion.  Plaintiffs do not appear to have filed a reply regarding their original motion to strike or an opposition to Bailey's motion to strike.

Given this series of documents, the Court first addresses the pending motions to strike before turning to the motions to dismiss.

1

## I.     Overview of Facts Alleged in the Complaint

Plaintiffs maintain that the City of Montgomery and Alabama District Attorney Bailey threatened or incarcerated indigents who owed fines to the City.  Comp. ¶ 10.  The City's previous collection policies were subject to litigation and ultimately a settlement.  *Id.* at 11-12.  Plaintiffs maintain that as an alternative to the system agreed upon in settlement, plaintiffs and others were sent letters on Bailey's letterhead demanding payment for municipal fees—plus a "collection fee"—lest the recipients face arrest.  *Id.* 13-14.

Plaintiffs argue this is unlawful as there was no due process for the issuance of any arrest warrants and additionally that the District Attorney is not authorized to use his power to collect fines on behalf of the City.  *Id.* at 15-16.  They also argue that because the underlying cause of the fines were traffic offenses, Alabama law contains limitations on how and when such fines can be converted to incarceration—limitations that were not followed in this case.

Plaintiffs each articulate that they had fines for traffic offenses in Montgomery and were threatened with arrest in letters from Bailey.  *Id.* at 34-54.  They further state they should have been provided process before being threatened with arrest and that ultimately each defendant reported to the municipal court and was not arrested.  *Id.*

## II.    Plaintiffs' Motion to Strike Portions of the City's Motion to Dismiss

The City and Bailey filed motions to dismiss the complaint for failure to state a claim.  ECF Nos. 9, 13.  In the City's brief supporting its motion, the City made arguments regarding each of the three named plaintiffs.  City Brief Supp. Mot. Dismiss 6-7, ECF No. 10.  The City argued that the plaintiffs had warrants issued for their arrest due to failure to appear.  The City attached plaintiffs' court records as well as two court related documents, a chart of court costs and fees and

blank traffic ticket related forms.  These documents were attached as exhibits 1-5.  ECF Nos. 10-1 through 10-5.

Plaintiffs responded, in part, with a motion to strike these attachments and portions of the City's brief that derive from said attachments.  Pls.' Mot. Strike, ECF No. 17.  Plaintiff argues that the attachments should not be considered at this stage of the litigation and further notes several purported issues with the substance of the attachments.  *Id.*  The Court notes that while there is a motion and a response, there does not appear to be a reply on the record.

In determining if the Court can consider extrinsic documents in a motion to dismiss for failure to state a claim the Court must determine if (1) the documents are central to the claims and (2) the authenticity of the documents is not challenged.  *Speaker v. U.S. Dep't of Health & Human Servs. Centers for Disease Control & Prevention*, 623 F.3d 1371, 1379 (11th Cir. 2010).  *Speaker* provides insight for what it means for the authenticity of documents to be challenged.  There, the Center for Disease Control and Prevention (CDC) provided press conference transcripts.  *Id.* at n. 8.  Speaker contested the authenticity of these documents by alleging irregularities and omissions.  *Id.*  CDC supplemented the record with videos of the press conferences in question and Speaker did not contest the authenticity of those videos on appeal.  *Id.*; *see also Horsley v. Feldt*, 304 F.3d 1125, 1135 (11th Cir. 2002) (holding that transcripts were disputed when a party argued, among other things, they were incomplete).

Defendants argue that the Court can also consider the documents as the Court may take judicial notice of public records.  While the Court does not doubt it has this power, defendants' arguments are misplaced in this regard.  Defendants cite a single unpublished opinion in support of their argument, *Universal Express, Inc. v. U.S. S.E.C.*, 177 F. App'x 52 (11th Cir. 2006).  The logic ultimately underlying that line of cases is that "[w]hen SEC documents are relevant only to

determine what statements or disclosures are actually contained therein, there can be little question as to authenticity, nor can the fact that such statements or disclosures were thus publicly filed be reasonably questioned." *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1278 (11th Cir. 1999). The facts in this case are inapposite.

In this case several of the disputed exhibits are central to the claims yet nonetheless disputed. The exhibits purport to be court records for plaintiffs as well as the forms and fee structures at issue in this litigation. However, despite the City's assertions to the contrary, Resp. Mot. Strike 1, ECF No. 26, plaintiffs do contest the authenticity of the documents, Pls.' Mot. Strike ¶ 6, n. 1. Specifically, plaintiffs argue there are gaps in the documents and that many documents are unsigned or undated. *Id. Speaker* and *Horsley* show that challenging the authenticity of a document does not necessarily entail insisting the document is in no way what it claims to be. The parties in those cases argued that the transcripts were incomplete or had irregularities, not that every word was improperly transcribed. Here, plaintiffs likewise argue there are irregularities in the attached documents such as unsigned warrants, gaps between imposed fines and fees owed with no explanation, and a number of undated documents. Plaintiffs' argument is thus sufficient under *Speaker* and *Horsley*.

As the authenticity of documents 10-1, 10-2, and 10-3, are challenged, the Court GRANTS plaintiffs' motion to strike with respect to those three documents as well as arguments in the brief derived from those documents. Defendants will be free to include those documents in a later motion for summary judgement under Federal Rule of Civil Procedure 56 if they so desire.

However, plaintiffs' argument only extends to the purported court records for the plaintiffs, three of five of the exhibits in question. Document 10-4 is a form showing fees and fines in municipal courts. Given that the complaint regularly discusses these fees and the legality or

propriety of these fees, the Court believes this document is central to the claims at issue. Moreover, plaintiffs have not challenged the authenticity of this document and their brief contains only a single sentence asserting it should be stricken. Pls.' Mot. Strike ¶ 7. Document 10-5 is a series of blank forms regarding traffic citations. This document is likewise central to the claims as it relates to warrants being issued in relation to traffic violations. As with 10-4, plaintiffs' single sentence is the only challenge to this document. The Court thus DENIES plaintiffs' motion to strike with respect to documents 10-4 and 10-5.

## III.     Defendant Bailey's Motion to Strike

In addition to plaintiffs' motion to strike portions of the City's motion to dismiss, Bailey filed a motion to strike an attachment to plaintiffs' response to his motion to dismiss. Bailey Mot. Strike, ECF No. 25. There is no response or reply on the record.

The document in question is a letter from the United State Department of Justice (DoJ) that is posted on the DoJ website. Letter Regarding Law Enforcement Fees and Fines, available at https://www.justice.gov/crt/file/832461/download; ECF No. 16-1. Bailey claims it is extraneous and irrelevant. Bailey Mot. Strike ¶ 4. The Court can find no discussion of the attachment in the brief to which it was appended. It is thus not clear for what purpose it was attached. Bailey's motion to strike will thus be GRANTED. However, the Court notes that the attachment is primarily a discussion of federal law. That the letter has been stricken does not limit the Court's ability to come to similar conclusions or cite the same cases.

## IV.     The Motions to Dismiss

The City and Bailey moved to dismiss all counts against them for failure to state a claim. The Court will analyze the parties' arguments count by count.

A motion to dismiss is appropriate when the complaint fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Such a failure occurs when the complaint is so factually deficient that the plaintiff's claim for relief is not plausible on its face. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Though facts in a complaint need not be detailed, Rule 8 "demands more than an unadorned, the-defendant-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court must accept all factual statements as true when deciding a Rule 12(b)(6) motion to dismiss. *Id.* at 678. However, conclusory legal allegations devoid of any factual support do not enjoy the same presumption of truth. *Id.* at 679. "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. This is not a high bar however, as plaintiffs need only plead facts sufficient to "nudge[ ] their claims across the line from conceivable to plausible." *Id.* at 547.

1.  Denial of Due Process by the City of Montgomery

Count one contends that the City violated due process by allowing Bailey to mail letters that threatened to arrest plaintiffs after seven days if certain payments were not rendered. The intent of these letters was to coerce payment of fines owed to the City. The count further claims that due process was violated by the addition of a 30% collection fee.

With regards to process, there was no judicial action or discretion, no mention of court dates or payment plans, and plaintiffs were not advised of the nature of any warrant that was issued. *See* Comp.

a.  Standing

As an initial matter, the City notes that plaintiffs articulate injuries that include "conversion of fines to jail sentences." Comp. ¶ 77. However, each of the named plaintiffs claims they

appeared in Court and were not in fact arrested.  Comp. ¶¶ 40, 45, 53.  Accordingly, to the extent

that this count is for violations of due process relating to actual arrest as identified in the letter,

plaintiffs lack standing to assert and such violations.  *See Lujan v. Defenders of Wildlife*, 504 U.S.

555, 560 (1992).  This does not mean plaintiffs lack standing for any injuries associated with the

threat of arrest however.  As they were in fact threatened with imminent arrest, such threats are

not conjectural or hypothetical.

b.   Due Process Rights Associated With Threat of Arrest

Plaintiffs contend the letters and ongoing threat of arrest amount to a violation of due

process.  The City argues that as a matter of law the threat of arrest does not amount to a violation

of due process.

Due process may be procedural or substantive.  *Zinermon v. Burch*, 494 U.S. 113, 125

(1990).  Substantive due process "bars certain arbitrary, wrongful government actions regardless

of the fairness of the procedures used to implement them."  *Id.* (internal quotations omitted).  In

procedural due process claims, "the deprivation by state action of a constitutionally protected

interest in 'life, liberty, or property' is not in itself unconstitutional; what is unconstitutional is the

deprivation of such an interest *without due process of law*."  *Id.*

The parties discuss whether the threat of arrest generally is sufficient to trigger a violation

of due process.  This question in the abstract is too broad, there are clearly cases wherein the threat

of arrest is a violation of due process rights and others where it is not.  For example, a police officer

threatening to bring criminal charges against an individual who may have committed wrongdoing,

*see, e.g.*, *Arnold v. Truemper*, 833 F. Supp. 678, 683-84 (N.D. Ill. 1993), is categorically different

from if an officer threatened someone with arrest to discourage their appealing a conviction. That is, the context of the threat is important to determining if due process was violated.

The rights protected by substantive due process are generally understood to be those rights "implicit in the concept of ordered liberty." *Palko v. Commecticut*, 302 U.S. 319, 325 (1937). Under this Circuit's precedent "not every wrong committed by a state actor rises to the level of a 'constitutional tort,' sufficient to trigger a substantive due process violation." *Lee v. Hutson*, 810 F.2d 1030, 1032 (11th Cir. 1987). Moreover, "plaintiffs face a high bar when attempting to establish a substantive due process violation as conduct by a government actor will rise to the level of a substantive due process violation only if the act can be characterized as arbitrary or conscience shocking in a constitutional sense." *Maddox v. Stephens*, 727 F.3d 1109, 1119 (11th Cir. 2013) (internal quotations omitted).

In this case plaintiffs had committed various traffic offenses and owed fines to the city. They received letters from the District Attorney demanding they pay within seven days or face arrest. Comp. ¶ 14. The letters had no mention of court dates or payment plans. *Id.* at ¶ 72. Additional fees were also added to the plaintiffs' fines. *Id.* at ¶ 68.

This does not amount to a violation of substantive due process. It does not shock the conscience that a letter would be sent by the District Attorney threatening to arrest those individuals who did not pay fines levied against them for wrongdoing. Similarly, the assessment of fees against individuals who do not pay in a timely manner does not appear to violate rights "implicit in the concept of ordered liberty."

However, plaintiffs do state a claim with respect to procedural due process. The letters threaten deprivation of liberty and demand payment without providing information on Court dates,

alternative payment arrangements, or other forms of process.  At this stage of the proceedings, the Court takes the plaintiffs' allegations as true.  The allegations explicitly include that arrest warrants were issued without any process as a result of the non-payment of fines.  Comp. at ¶ 15.  Given plaintiffs' interests and the nonexistent or minimal burned of providing additional process, the alleged policy fails to meet the requirements articulated in *Matthews v. Eldridge*.  424 U.S. 319 (1976).

Supreme Court and Eleventh Circuit precedent speak to the issue of incarcerating indigent defendants due to their inability to pay.  In *Williams v. Illinois* an individual was unable to pay a court ordered fine and was made to sit out the fine at a rate of $5/day after the conclusion of his normal jail term.  399 U.S. 235 (1970).  The Court held that this practice was impermissible as it amounted to "impermissible discrimination that rests on ability to pay," *id.* at 241.  *Williams* was extended in *Tate v. Short*, 401 U.S. 395 (1971), "which held that a State cannot convert a fine imposed under a fine-only statute into a jail term solely because the defendant is indigent and cannot immediately pay the fine in full."  *Bearden v. Georgia*, 461 U.S. 660, 664 (1983).

*Williams* and *Tate* thus stand for the proposition that "the State cannot 'impos[e] a fine as a sentence and then automatically conver[t] it into a jail term solely because the defendant is indigent and cannot forthwith pay the fine in full.'"  *Id.* at 667 (citations omitted).  After reviewing these cases, *Bearden* articulates the law as it applies to jailing people for indigence:

> [I]n revocation proceedings for failure to pay a fine or restitution, a sentencing court must inquire into the reasons for the failure to pay. If the probationer willfully refused to pay or failed to make sufficient bona fide efforts legally to acquire the resources to pay, the court may revoke probation and sentence the defendant to imprisonment within the authorized range of its sentencing authority. If the probationer could not pay despite sufficient bona fide efforts to acquire the resources to do so, the court must consider alternate measures of punishment other than imprisonment. Only if alternate measures are not adequate to meet the State's interests in punishment and deterrence may the court imprison a probationer who

has made sufficient bona fide efforts to pay. To do otherwise would deprive the
probationer of his conditional freedom simply because, through no fault of his own,
he cannot pay the fine. Such a deprivation would be contrary to the fundamental
fairness required by the Fourteenth Amendment.

*Id.* at 672–73.  The Court further explained that courts also may not imprison people for failing to

follow court orders to pay fines, as imprisonment for failing to follow court orders of that nature

is "no more than imprisoning a person solely because he lacks funds to pay the fine."  *Id.* at 674.

The 11th Circuit has thus interpreted *Bearden* to require sentencing courts to determine

"(1) whether the defendant made a bona fide effort to pay and (2) if the defendant made such an

effort and still cannot comply, whether alternative measures of punishment are available," *United

States v. Mitchell*, 317 F. App'x 963, 965 (11th Cir. 2009) (citing *United States v. Satterfield*, 743

F.2d 827, 842 (11th Cir.1984)), before incarcerating those unable to pay.

Here, there was no actual incarceration, plaintiffs do not plead that they were jailed after

being sent the letters at issue.  However, these cases clearly articulate that punitive actions taken

solely because of indigence without consideration of the alternatives is unlawful and a violation of

due process.  Taking plaintiffs' allegations as true, the City's actions appear to fall into this

category and, as such, are unlawful.

2.   Denial of Due Process by District Attorney Bailey

Plaintiffs also claim Bailey violated their rights through his actions in his official capacity.

The Court's general reasoning from Count one applies equally here, but Bailey also makes several

arguments that are unique.  Specifically, he argues that he is immune from suit under the 11th Amendment, the Alabama Constitution, and because of prosecutorial immunity.[1]

a.   Immunity Under § 14 of the Alabama Constitution

To determine whether a state official is covered by eleventh amendment immunity, we consider the laws of the state.  *Carr v. City of Florence, Ala.*, 916 F.2d 1521, 1525 (11th Cir. 1990). Section 14 of the Alabama Constitution reads: "the State of Alabama shall never be made a defendant in any court of law or equity."   The Supreme Court of Alabama has explained that "[s]tate officers sued in their official capacities are also absolutely immune from suit when the action is, in effect, one against the state."  *Lyons v. River Rd. Const., Inc.*, 858 So. 2d 257, 261 (Ala. 2003) (internal quotations omitted).

Under Alabama law, "[t]he wall of immunity erected by § 14 is nearly impregnable." *Patterson v. Gladwin Corp.*, 835 So. 2d 137, 142 (Ala. 2002).  Nonetheless, there are "species of action" that are not deemed as being against the state and thus are not barred.  These include compelling state officials to perform legal duties, enjoining state officials from enforcing unconstitutional laws, compelling state officials to perform ministerial acts, and actions under the Alabama Declaratory Judgment Act.  *Id.*

While the parties make arguments about whether Bailey is covered under § 14, this analysis does not appear to be necessary in light of Federal precedent that assumes sovereign immunity for Alabama district attorneys and proceeds to analyze the scope of that immunity under the Eleventh Amendment.  *See Summit Med. Assocs., P.C. v. Pryor*, 180 F.3d 1326 (11th Cir. 1999) (analyzing

---

[1] These briefings are incredibly difficult to follow.  The Court notes that Bailey's briefs and motions are not broken into sections and are often numbered paragraphs of nothing more than legal conclusions.  Both parties' briefs do little by way of argumentation.

11

sovereign immunity claim of a Montgomery City DA under the Eleventh Amendment).  A series of cases appear to confirm this general argument.  *See, e.g.*, *Harris v. Falls*, 920 F. Supp. 2d 1247, 1256 (N.D. Ala. 2013) ("district attorneys are members of the executive branch of state government." (citing and quoting *Piggly Wiggly No. 208, Inc. v. Dutton*, 601 So. 2d 907, 910 (Ala. 1992))).  *See also Carr*, 916 F.2d at 1525 (analyzing the exceptions to § 14 for executive officers).

However, to the extent this Court must address the issue of § 14 immunity, it notes the following.  First, plaintiffs focus on the requirement that a suit against a state officer is one against the state "when a result favorable to plaintiff would be directly to affect the financial status of the state treasury."  *State Docks Comm'n v. Barnes*, 225 Ala. 403, 405 (1932).  *State Docks* distinguishes between the "arm-parts" of the state and "state corporations set up to engage in business enterprises to promote the public good."  *Id.*  The District Attorney's office is clearly a part of the State and is not akin to institutions "usually created in form as private corporations with capital stock issued to and owned by the government."  *Id.*; *see also* Ala. Code § 12-17-225.4 (stating that funds collected through the statutory scheme defendants claim to utilize "shall be audited as all other state funds are audited").  Second, to the degree the exceptions articulated in *Patterson* allow for some form of injunctive relief, the parties have not addressed how the scope of any § 14 waiver is related to the scope of permissive suits under *Ex parte Young*, addressed below.  Given that the § 14 wall is "nearly impregnable," *Patterson* at 142, and the briefings from the parties are light on analysis, the Court finds that Bailey is covered by § 14, prompting an analysis of sovereign immunity under the Eleventh Amendment.

b.  Immunity Under the Eleventh Amendment

Bailey claims to be absolutely immune under the Eleventh Amendment of the United States Constitution.  Bailey Mot. Dismiss ¶ 4.  The Eleventh Amendment bars suits against a state by

both citizens of other states and also the state's own citizens. *Summit Med. Assocs., P.C. v. Pryor*, 180 F.3d 1326, 1336 (11th Cir. 1999). There is a widely recognized exception to this rule however: suits seeking prospective relief to end continuing violations of federal law. *See Ex parte Young*, 209 U.S. 123 (1908); *See also* 180 F.3d at 1337 ("[T]he Eleventh Amendment bars suits against state officials in federal court seeking retrospective or compensatory relief, but does not generally prohibit suits seeking only prospective injunctive or declaratory relief.").

There are limitations to the *Ex parte Young* doctrine. For example, there must be an alleged violation of not just state, but federal law. *Papasan v. Allain*, 478 U.S. 265, 277 (1986). Additionally, the violations must be ongoing rather than retrospective. *Id.*

Bailey does not argue that any of those exceptions apply. Indeed, there is no response to plaintiffs' arguments regarding *Ex parte Young*. Here, it appears plaintiffs allege ongoing violations of rights under the United States Constitution. Comp ¶¶ 79, 87. Accordingly, *Ex parte Young* provides an exception to the Eleventh Amendment in so far as plaintiffs are seeking injunctive or declaratory relief for this count.

However, Bailey correctly notes that plaintiffs requested relief ranges from injunctive relief to compensatory damages. As the *Ex parte Young* doctrine does not allow for compensatory relief, the Eleventh Amendment does grant immunity to such requests for relief. Moreover, to the extent that plaintiffs allege violations of due process due to Bailey violating state law, such claims cannot be raised through the *Ex parte Young* doctrine. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984) ("We conclude that *Young* and *Edelman* are inapplicable in a suit against state officials on the basis of state law."); *Alabama v. PCI Gaming Auth.*, 801 F.3d 1278, 1290 (11th Cir. 2015) ("Federal courts have long recognized that state officials are immune from state law claims brought against them in their official capacity because the *Ex parte Young* doctrine does

13

not reach such claims."). Accordingly, Bailey's immunity also extends to state law claims in this case.

### c.   Prosecutorial Immunity

Bailey also claims to be immune from suit under the doctrine of prosecutorial immunity. "Although absolutely immune for actions taken as an advocate, the prosecutor has only qualified immunity when performing a function that is not associated with his role as an advocate for the state." *Jones v. Cannon*, 174 F.3d 1271, 1281–82 (11th Cir. 1999). That is, "the actions of a prosecutor are not absolutely immune merely because they are performed by a prosecutor" *Buckley v. Fitzsimmons*, 509 U.S. 259 (1993).

In this case plaintiffs allege Montgomery City delegated administrative functions to Bailey. Comp. ¶ 80. In support of this position, they note that the letters sent to plaintiffs were on Bailey's letterhead, *id.* at ¶ 13, but that payment was not made to the state, but rather to Montgomery City, *id.* at ¶ 14. Given that this is a 12(b)(6) motion and plaintiffs need only "nudge[ ] their claims across the line from conceivable to plausible," *Twombly*, 550 U.S. at 547, the facts alleged are sufficient to avoid the defense of prosecutorial immunity. In short plaintiffs are maintaining that Bailey was functioning in an administrative role for the City as collection agent, not in his role as a prosecutor.

### 3.   Violation of Equal Protection by Montgomery

Plaintiffs argue that the City violates their rights to equal protection secured by the Fourteenth Amendment. Specifically, that the City's policy amounts to disparate treatment on the basis of indigence. Comp. ¶ 100. This is due to the surcharges added to the base fee owed by plaintiffs, which they argue is punitive and directed at indigent citizens.

The parties appear to agree that this equal protection claim should be analyzed under the rational basis test as indigency is not a protected class that receives a higher level of scrutiny. *See Johnson v. Bredesen*, 624 F.3d 742, 761 (6th Cir. 2010).

The government has presented a rational basis for their actions. They maintain that the government has an interest in timely payment of fines. Additionally, pursuing those who did not pay creates costs for the government, justifying additional fees being levied against those individuals. While plaintiffs allege disparate impact on indigent individuals, they do not allege that these letters were sent exclusively to indigent defendants or otherwise uniquely target them. To the contrary, the argument appears to be that the additional fees and threats of arrest have a far more significant impact on indigent individuals as it may force such individuals to sacrifice "other obligations and necessities of life." Comp. ¶ 103.

The Court is very sympathetic to the plight of indigent individuals. However, that costs and fines have a more significant impact on those who cannot or can hardly afford to pay does not make costs and fines unconstitutional violations of equal protection. Any fixed fine would have a larger impact on an individual with less money than one with more. The presence of fines or fees alone is thus insufficient to trigger a violation of equal protection, and plaintiffs' arguments against these specific fees appear to be merely arguments against fees more generally.

With respect to the additional fees that have been added in these instances, both for issuance of warrants and a more general surcharge, the government's proffered reason is indeed a rational basis. The government does have an interest in timely payment and there are likely to be additional costs associated with attempting to collect late fees. Plaintiffs argue that this particular fee is different because the fee is administrative rather than the result of legislation. They further argue that even if there is applicable law, the specific costs associated with the fee are arbitrary. The

problem with these arguments is that they appear to be arguments about due process, not equal protection. These issues impact equal protection in the same way that any other fine would: the levying of any fine, be it judicial with extensive process, something with minimal process, or wholly arbitrary, is going to impact the poor harder than the rich. If a fine is arbitrary, it can be challenged. If it is without process, that is a basis for suit. But that it is arbitrary or without process does not make it a violation of equal protection.

The Court notes that there is a body of binding precedent regarding indigence, cited above, that looks at equal protection. *See e.g. Bearden v. Georgia*, 461 U.S. 660, 665 (1983) ("Due process and equal protection principles converge in the Court's analysis in these cases."). For the reasons stated herein, this complaint appears to fall on the "due process" side of the scales. Nonetheless, the Court is mindful of this precedent, and to the extent plaintiffs' counts for violations of due process and equal protection are indeed a single convergent claim, plaintiffs state a claim for the reasons already articulated in the discussion on due process.

4. Violations of Equal Protection by District Attorney Bailey

For the same reasons the equal protection claim brought against the City fails to state a claim, the equal protection claim against Bailey fails to state a claim.

5. Violations of State Law by Montgomery

Plaintiffs allege that the City's policy violates a number of Alabama laws. They allege the purported basis for the fees, Alabama Code § 12-17-225.4, does not provide a legal basis for Montgomery's actions. Further, the practice is in violation of Alabama Code § 15-18-62 as it ignores the procedures that must be followed before jailing someone for failure to pay fines. Finally, it violates Article I § 20 of the Alabama Constitution as well as other statutes and rules.

Comp. ¶¶ 116-117.  This Court has jurisdiction over these state law claims pursuant to 28 U.S.C. § 1367.

a.   Alabama Code § 12-17-225

Alabama law allows for district attorneys to establish a "restitution recovery division" that administers, collects, and enforces court costs, fines, victim compensation and the like.  Ala. Code § 12-17-225.1 *et seq*.  Under this scheme the clerk of court notifies the district attorney when payments are in default and the restitution recovery division is empowered to collect or enforce collection of funds.  *Id.* at 225.2.  The key sections of the statute reads as follows:

> It is the purpose of this legislation to ensure that court-ordered restitution to crime victims, victim compensation assessments, bail bond forfeitures, court costs required by law, fines levied against criminals for wrongful conduct, and other court-ordered sums payable to the state or to the crime victims be paid in full and that cost of collection be borne by the person who is responsible for payment. The Legislature of this state further recognizes that the district attorneys of the various judicial circuits are mandated by law to represent the people of the state, and a strong public policy dictates that restitution, court costs, fines, and other court-ordered sums be enforced within each judicial circuit by the district attorneys in conjunction with the circuit clerks and local courts.

> Any law to the contrary notwithstanding, each district attorney may establish a special division designated the "restitution recovery division" for the administration, collection, and enforcement of court costs, fines, penalty payments, victim compensation assessments, bail bond forfeitures, restitution, or like payments in civil or criminal proceedings ordered by the court and payable to the state or to crime victims, or judgements entered which have not been otherwise vacated, or judicial relief given from the operation of the order or judgement.

> The court or the clerk of the court shall notify the district attorney in writing when any bail bond forfeitures, court costs, fines, penalty payments, crime victims restitution, or victims' compensation assessments or like payments in any civil or criminal proceeding ordered by the court to be paid to the state or to crime victims have not been paid or are in default and the default has not been vacated. Upon written notification to the district attorney, the restitution recovery division of the office of the district attorney may collect or enforce the collection of any funds that have not been paid or that are in default which, under the direction of the district attorney, are appropriate to be processed. In no event shall a court or court clerk notify the district attorney in less than 90 days from the date the payments are due to be paid in full.

§ 12-17-225-225.2.

Plaintiffs argue that § 225 does not allow for the DA to participate in collection of municipal debts. This is because title 12 chapter 17 of the Code, where this section is located, is titled "Circuit and District Court Personnel." Moreover, there are repeated references to circuit and district courts, but no mention of municipal courts and only a passing mention of local courts. *Id.* Reinforcing this argument is the fact that municipal courts are covered in chapter 14 of title 12. Ala Code § 12-14. Nothing in chapter 14 references or otherwise explicitly allows for municipal courts to participate in § 225's statutory scheme. Finally, the collection concerns monies payable "to the state" or to crime victims. § 225. Fines for municipal offenses are neither.

Defendants argue that § 225 does allow for the collection of municipal fees. They find support for this in the text of the statute as well as the structure of the Alabama court system. Under the Alabama constitution, judicial power is vested in a "unified" judicial system that includes municipal courts. ALA. CONST. art. VI, amend. 328. As part of this unified judicial system, money paid to municipal courts is, at least in part, paid to the state. *See* Ala. Court Costs Form, ECF No. 10-4. Finally, defendants note that title 12 chapter 17 is titled "Circuit and District Court *Personnel*," and note that § 225 governs the creation of a restitution recovery division by such personnel. The structure of the statute thus is not contrary to defendants' reading.

Neither party cites Alabama precedent for how this state law question would be resolved in state courts. Accordingly, the Court must attempt to determine how Alabama courts are likely to resolve this issue. *Bravo v. United States*, 577 F.3d 1324, 1325-1326 (11th Cir. 2009). The Court concludes that Alabama state courts would likely find that the restitution recovery division may collect debts owed to municipalities.

The purpose of the restitution recovery division is to obtain money owed to the State or to victims. This case does not involve money owed to victims, but it does involve money owed to the state. Defendants have provided a form showing costs in municipal courts. These are broken down by line item and in many cases are clearly identified as going to the state. Ala. Court Costs Form. For example, traffic court costs include a $9.34 fee for the "State Judicial Administration Fund," $21 for the "State General Fund," and $11 for the "Alabama DNA Database Fund." *Id*. While it is true that municipal courts are covered in a different chapter of the Alabama Code, it is also true that the chapter in question relates to *personnel*, and the article in question, article 6 of chapter 12 title 17, relates to District Attorneys. That is, the structure of the code indicates that the division may be established by the district attorney—consistent with the text—not that all fines and costs must originate with circuit and district court personnel. If the Court accepted plaintiffs' argument as to structure, given the title and chapter location of the statute, it would logically have to look to article. Under plaintiffs' logic, the restitution recovery division's mandate would be limited not to district and circuit courts, but to fines and costs owed to district attorneys. This would, of course, render the statute meaningless.

As evident in the statutory text above, § 225 makes regular reference to "the court" or "courts." As another example, § 225.3 allows for the DA to take steps to collect money including:

> (1) a petition for revocation of probation; (2) a show cause petition for contempt of court; (3) any other civil or criminal proceedings which may be authorized by law or by rule of court. In addition, the district attorney may issue appropriate notices to inform the defendant of the noncompliance of the defendant and a warning of the penalty for noncompliance.

§ 225.3. Plaintiffs are correct that this section implies that "court" and "courts" are those that the District Attorney practices in, presumably the state district courts. However, it is not necessary to read "court" through the statute as the specific court implied in 225.3. "Municipal," "district," and

19

"circuit" are all hyponyms of "court," their hypernym in this instance.  That is, they all share a *type-of* relationship with "courts."  This Court sees no basis to distinguish between these types within the text of the statute as a whole.  Indeed, to the contrary, the statute appears to explicitly consider a broad understanding of "courts" given the prefatory language "in conjunction with the circuit clerks and local courts."  § 225.  Given this, Alabama courts would likely find § 225.2 allows for municipal courts to work with the DA to collect costs and fees.

As § 225 *et seq.* allow for the DA to seek to recover costs and fines levied in municipal courts, the City's actions were not in violation of § 225.

b.   Alabama Code § 15-18-62

Plaintiffs claim that the City violated § 15-18-62 by "ignoring the protections and procedures that must be followed prior to jailing someone for not paying fines and costs."  Comp. ¶ 117.  The Court does not find it necessary to analyze § 15-18-62.  As mentioned previously, each named defendant claims they went to court and were not in fact jailed as a result of the letter. Accordingly, there is no standing to claim violations of this section of the Alabama Code.

c.   Other Alabama Code or Constitutional Violations

To the extent that plaintiffs are alleging other violations of the Alabama Code or Constitutional Violations, the allegations are not clearly articulated or briefed.  To the extent they are, they do not appear to state a claim.  For example, there seems to be dispute as to whether the $32 warrant fee is legal under Alabama law.  *See* Pls.' Resp. Defs.' Mot. Dismiss 18, ECF No. 15. The City has cited the authorities for the $32 fee, Ala. Code 36-18-32(h) requiring a $12 fee, and 12-19-171(a)(1) requiring a $20 fee.

6. Violations of State Law by District Attorney Bailey

Given the prior analysis regarding state law as well as immunity under the Alabama constitution, plaintiffs fail to state a claim with respect to Bailey. This is because the alleged violations of state law are the same as those involving the City of Montgomery and because plaintiffs articulate no new argumentation regarding immunity.

7. City of Montgomery Policy or Practice

As a final argument independent of any particular claim, the City of Montgomery argues that any claims against them should be dismissed because they do not have power over the actions of judges and clerks of the municipal court. The degree to which the City has power over municipal judicial personnel remains unresolved despite the settlement in *Mitchell v. City of Montgomery*. *See Mitchell v. City of Montgomery*, No. 2:14-CV-186-MHT, 2014 WL 11099432, at *1 (M.D. Ala. Nov. 17, 2014).

We need not resolve the issue at this time. The complaint alleges that the policy to send these letters to Bailey is administrative and not linked to judicial actions by the municipal court in Montgomery. *See* Comp. at ¶ 27 ("The City's action is administrative in nature and not undertaken in a judicial capacity by the municipal court in Montgomery."); *see also* ¶ 71 ("The scheme of Montgomery and Bailey was administrative and was not a matter of judicial action or discretion."). Given that this Court takes factual assertions as true, plaintiffs' claims are for City policy or practice, not the decisions of municipal court judges.

V. **Conclusion**

Upon review of the briefings of the parties, the arguments made at the motions hearing held by the Court on Aug. 18, 2016, and the applicable law, the Court concludes:

21

Attachments 10-1, 10-2, and 10-3 and any portions of defendants' briefs addressing or otherwise relying on those attachments are struck for the purposes of resolving the motions for failure to state a claim.  Attachment 16-1 is also struck.  Attachments 10-4 and 10-5 are not struck. Plaintiffs' motion to strike will be GRANTED in part and DENIED in part.  Bailey's motion to strike will be GRANTED.

Plaintiffs have stated a claim against defendants for counts one and two of their complaint as discussed above.  Plaintiffs failed to state a claim with respect to the remaining counts. Accordingly, both the City and Bailey's motions to dismiss will be GRANTED in part and DENIED in part.

A separate order will be issued on this date.

Royce C. Lamberth
United States District Judge

DATE: 3/10/17