IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| BRAZIL RUDOLPH, TITO WILLIAMS, ) <br> and EVELYN BROWN, individually and for ) <br> a class of similarly situated persons, ) <br> ) <br>     Plaintiffs, ) <br> ) <br> ) <br> THE CITY OF MONTGOMERY; et al., ) <br> ) <br>     Defendants. ) | CIVIL ACTION NO.: <br> 2:16-cv-57-RCL <br><br> ORAL ARUGMENT <br> REQUESTED |

### RESPONSE OF CITY DEFENDANTS TO
### PLAINTIFFS' MOTIONS TO WITHDRAW FROM SETTLEMENT

City of Montgomery submits the following in response to Plaintiffs' several Motions to Withdraw from the executed Settlement Agreement:

After approximately twelve months of negotiations and exchanges of draft documents, all parties to this action concluded and executed a comprehensive set of settlement documents on May 10, 2018.[1] This settlement involved the District Attorney, who was separately represented by the Office of the Attorney General of Alabama. It was painstakingly negotiated, drafted and re-drafted, so as to embody the interests and demands of both the Plaintiff Class, the City and the District Attorney, who was ultimately dismissed by agreement in connection with the settlement.

---

[1] Those documents included:
   (1) The Settlement Agreement;
   (2) A proposed Motion for Preliminary Approval of Class Settlement;
   (3) A proposed form of individual notice to class members;
   (4) A proposed form of publication notice to the class;
   (5) A memorandum of law in support of class certification;
   (6) A proposed order granting preliminary approval of settlement classes, directing notice to be sent and setting a fairness haring;
   (7) Proposed Motion to Dismiss the District Attorney as a Defendant; and
   (8) Motion for Conditional Joinder of the Presiding Judge of the Municipal Court.

Throughout the drafting process, there were various blanks to be filled in, such as dates for notice, duration of the forward relief, and the number of potentially affected persons. Each such bit of information was place-marked by bolded bracketed digit (i.e., **[ - ]**), until the exact information could be obtained and agreed on. One of those bits of information was the number of putative class members, which was place-marked as **[7]**; that number was dependent on the final inclusive class period dates and the ability of the Municipal Court and the District Attorney's office to undertake to identify the persons to whom letters were sent or who paid District Attorney fees and/or warrant fees for purposes of giving notice. Several emails were exchanged in which the need to determine the class size and individual identifications were items which were discussed. See Docs. 57-1 and 57-2.

Because D.A. collection letters were continuing to be sent during the pendency of the litigation, the precise number of potential class members continued to change, and the parties desired to achieve a result in which the relief and the necessary delay in scheduling a fairness hearing and giving notice would overlap as closely as possible. It was also necessary to obtain the consent of the Municipal Judges to be joined for the purpose of effectuating relief by forgiveness of various fees and agreeing to not impose those fees going forward.

The Complaint by the named Plaintiffs (and their counsel) averred that: "The members of the class are so numerous that joinder of all members is impracticable." (¶ 56). And in ¶ 57: "At this time, the exact number in the Class is unknown but <u>would be more than one thousand</u> and is ascertainable" (emphasis added).

Rule 11, Fed. R. Civ. P., presupposes (and requires) that such allegations were made after reasonable inquiry and in a good faith belief that they were true. The class period averred covered more than eight years by the date of the settlement.

When the final number was determined, by virtue of considerable efforts and substantial expense on the part of both the Municipal Court and the District Attorney, the place-holder bracket was replaced by the actual number, and the final revised document was submitted again to Plaintiffs' counsel for review and execution.  <u>No one</u> ever could have thought that the number of people who had delinquent debts to the Municipal Court for fines and costs for over eight years was seven persons.  None of those elements of a class action such as numerosity, superiority, or manageability could have been met had that been the case.  The entire machinery of a class action is ridiculous if the only claims are those of seven people, each of whom had, at most, a few dollars in claims.  Indeed, the Plaintiffs' attorneys' fee which forms part of the settlement could not conceivably be justified, since it would exceed the entire monetary relief to a class of seven people.  The City and its counsel have incurred significant expense to try to determine how to identify class members for the purpose of notice, and have approximately 200 hours of legal fee time in negotiating, drafting, reviewing, redrafting and finalizing the settlement documents, the notices, the petition for consent joinder, etc., which the City ought not bear if the Plaintiffs are permitted to withdraw.

This Court has already ruled that the District Attorney's fee and warrant fee are lawful under Alabama law, and the only viable claim left to try is as to the form of the letter sent to delinquent defendants.  No class could even properly be considered by this Court if the maximum number of participants were only seven.  Plaintiffs' counsel, who had the drafts with the placeholder bracketed **[7]** never suggested that they were in any way surprised at so low a number.

Now, Plaintiffs have filed five different versions of a Motion to Withdraw from the Settlement, initially on the unfounded allegation that Defendants' counsel somehow snuck in the actual number, while Plaintiffs' counsel truly believed all along that it was seven.

The motivation for the instant motions seems transparent: counsel in other cases against the City have decided that an order approving the Rudolph settlement might bar them from re-litigating the Rudolph class claims in other cases. That motivation is as much as conceded in the motions,[2] and in the communications made by Plaintiffs' counsel at the time of the Motions to Withdraw. The Plaintiffs' hyperbolic statements in their motions are not only wrong, but wholly unsupportable. Looking at them plainly discloses that they have no basis in fact or evidence. For example:

(i) Paragraph 6, Swerdlin motion, Doc. 51: "Throughout the negotiation process with opposing counsel, the undersigned operated with the belief that the number of class members was seven." This asserted mental blackout by counsel cannot be established by any admissible evidence; it is, of course, contradicted by the whole history of these negotiations.

(ii) "Only today has counsel fully learned of his error." (Id.). "Today" was the day of the Motion to Withdraw.

(iii) "Going forward with the proposed settlement would result in numerous objections and interventions." (Id.). That assertion is inherently unknowable in advance, unless counsel in the other cases intend to solicit such objections and interventions.

The purpose, of course, of a fairness hearing is not only for the Court to evaluate the settlement, but to have a forum to determine whether there are – or are not – objections, and whether those objectors have rational or persuasive grounds for objecting. (As the Court will have noted in the Settlement Agreement, the City retained the right to withdraw if too large a number of objectors (that is, in excess of twenty-five[3] which clearly supports the conclusion that Plaintiffs

---

[2] "There are two other matters pending which might be affected." (Doc. 49, Dawson motion, p. 2; Doc. 51, Swerdlin motion, p. 2).
[3] *See* Doc. 47-1 (Settlement Agreement) Par. 7.

4

did not believe the class size to be only seven) appeared and elected not to be part of the settlement.) There are serious ethical considerations if Plaintiffs' counsel in other litigation which they hope to promote solicit opt-outs to poison the present settlement. So, it is for the Court to determine if there are "no circumstances under which the settlement is acceptable" and to find out if there are "numerous" objectors. (Id.).

    (iv) "To go forward with a fairness hearing would be unnecessary, as there are no circumstances where the resolution might be construed as fair or acceptable to the Court. The Defendant City seeks to impose a broad scale deprivation of access to the courts for thousands of persons not directly related to the subject of this litigation." (Id.). These allegations simply have no substance and presuppose things that cannot possibly be taken as given facts.

The City is in no way or sense seeking "to impose" some deprivation of access to the courts or any other "deprivation." The settlement affords important relief to the class, well beyond what could reasonably be obtained if the case were to go forward on an individualized basis.

None of these matters can be dealt with summarily on Plaintiffs' Motions. Unless the Court simply denies the Motions to Withdraw (as it should), the Court must hear the facts (or lack thereof) which allegedly support withdrawal, weigh the benefits of the settlement and determine if any of Plaintiffs or their counsel can now continue in the litigation.

A settlement agreement is, in its essence, simply a contract, and it is binding on the parties to it, absent fraud or duress.

Under both federal and state law, such agreements are enforceable to the same extent as any private contract. Generally, "the law of contracts governs the construction and enforcement of settlement agreements," Hayes v. Nat'l Serv. Indus., 196 F.3d 1252, 1254 (11th Cir. 1999); Blum

v. Morgan Guaranty Trust Co. of N.Y., 709 F.2d 1463, 1467 (11th Cir. 1983); Hales v. Roper, 378 So.2d 225, 229 (Ala. 1979); Phillips v. Knight, 559 So.2d 564 (Ala. 1990).

In fact, federal courts in the Eleventh Circuit refer to state law principles to determine the scope of authority for an attorney to enter into a settlement agreement (there is, broadly, no federal law of contracts), Bailey v. Mead S. Wood Prod., 295 F.Supp.2d 1286 (M.D. Ala. 2003); Murchsion v. Grand Cypress Hotel Corp., 13 F.3d 1483, 1485 (11th Cir. 1994). Unless the contract involves the United States as a party, the state contract law guides the analysis of a federal court as to the enforceability of a settlement agreement even where a federal question is involved, Resnick v. Uccello Immobilien GMBH, Inc., 227 F.3d 1347, 1350 (11th Cir. 2000).

Alabama's rule on the authority of an attorney to bind his client to a settlement agreement is set out in § 34-3-21, Code of Alabama. That code section provides that an attorney has authority to bind his client in any action or proceeding, by any agreement in relation to such case, made in writing. That right of the attorney to bind his client includes the right to settle all questions involved in the case, Beverly v. Chandler, 564 So.2d 922, 923 (Ala. 1990). A client whose attorney has either acknowledged the settlement in open court or has entered into a written agreement may not later seek to set aside the agreement, Ex parte Sims, 627 So.2d 380, 382 (Ala. 1993).

Here, the settlement was negotiated by counsel, reduced to a comprehensive writing (which included the agreement itself and 11 exhibits), and formally executed by counsel.

It is not asserted that the clients were not informed of the settlement or did not consent to their attorneys' actions, but even if such an assertion were made (and it would be a damning accusation against counsel), the agreement would still be binding, because the attorney has authority to enter into a settlement, Cia Anon Venezolana De Navegacion v. Harris, 374 F.2d 33, 36 (5th Cir. 1967).

There is, in short, no basis for Mr. Rudolph, Mr. Williams and Ms. Brown to withdraw from the contract. In the class context, unless the Court approves a settlement class, it is conceded that absent class members cannot be bound. But it is appropriate for the Court to preliminarily approve the settlement classes, direct the sending of notice and set a fairness hearing (at which it may well prove to be true that absent class members have no objections which would negate the settlement).

It has to be presumed that the three named Plaintiffs deemed the settlement to be fair to themselves, and to be satisfied with the relief agreed to. They make no suggestion as to why it is not equally fair to others similarly situated. If the named Plaintiffs now contend they did not approve of the settlement their counsel worked out or did not know of its existence or contents, then that, too, demonstrates why the correct outcome can only be to deny the pending motions and set a fairness hearing for others to present objections, if any. Messrs. Rudolph and Williams, and Ms. Brown, and their counsel all determined that the settlement is reasonable and fair. They are, they aver, typical and representative of all others similarly situated, so that it should – indeed, must – be equally fair to all others. They should be held to their bargain.

When the individual claims are contractually settled, then those three people receive the individual relief bargained for, but they no longer can have <u>representative</u> status when they denounce the <u>class</u> settlement and withdraw from it; they necessarily cannot receive a class representative's incentive award, nor can their counsel be awarded a legal fee for serving as class counsel.

The instant motions are simply due to be denied, and the class process is due to go forward. Plaintiffs have, in fact, already prepared for filing a brief in support of such class certification,

arguing that the settlement is fair and reasonable to all class members, an outcome with which the City and District Attorney agree.[4]

Respectfully submitted this 25th day of October, 2018.

        s/ Richard H. Gill
        Richard H. Gill [ASB-7945-G70R]
        Shannon Holliday [ASB-5440-Y77S]
        Robert D. Segall [ASB-7354-E68R]
        COPELAND, FRANCO, SCREWS & GILL, P.A.
        P.O. Box 347
        Montgomery, AL 36101-0347
        holliday@copelandfranco.com
        segall@copelandfranco.com
        gill@copelandfranco.com

        s/Kimberly O. Fehl
        Kimberly O. Fehl [ASB-8054-O67K]
        Michael D. Brymer [ASB-0169-I35B]
        City of Montgomery Legal Department
        Post Office Box 1111
        Montgomery, AL  36101-1111
        kfehl@montgomeryal.gov
        mbrymer@montgomeryal.gov

        **ATTORNEYS FOR DEFENDANT**
        **CITY OF MONTGOMERY**

---

[4] That brief has been withheld now that the effort to withdraw has been made.

## CERTIFICATE OF SERVICE

      I hereby certify that on the 25th day of October, 2018, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Matthew Swerdlin
1736 Oxmoor Road #101
Birmingham, AL 35209
Email:  matt@attorneyswerdlin.com

J. Mitchell McGuire
McGuire & Associates, LLC
31 Clayton Street
Montgomery, AL 36104
Email:  jmcguire@mandabusinesslaw.com

William M. Dawson
Dawson Law Office
2229 Morris Avenue
Birmingham, AL 35203
Email:  billdawson94@hotmail.com

Benjamin H. Albritton
Assistant Attorney General
Office of the Attorney General
501 Washington Avenue
Montgomery, AL  36130-0152
Email:  balbritton@ago.state.al.us

                                                 s/ Richard H. Gill
                                                 Of Counsel